IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CARLA DAMEN, PILAR FEKETE, JASON GUSTAFSON, DAKNEELYA HARTY and KATY HUNGNESS, on behalf of themselves and all other persons similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> DAIMLER-CHRYSLER CORPORATION, INTERNATIONAL UNION, UNITED AUTO WORKERS, and LOCAL 1268, UNITED AUTO WORKERS, <br><br> Defendants. | No. 06 C 6491 <br><br> Wayne R. Andersen <br> District Judge |

## MEMORANDUM OPINION AND ORDER

This case is before the court on the motion of defendants Daimler-Chrysler Corporation, International Union, United Auto Workers ("UAW"), and Local 1268, United Auto Workers ("Local 1268") to dismiss the complaint of plaintiffs Carla Damen, Pilar Fekete, Jason Gustafson, Dakneelya Harty, and Katy Hungness for lack of subject matter jurisdiction and failure to state a claim pursuant to FED.R.CIV.P. 12(b)(1) and 12(b)(6). For the following reasons, the defendants' motion to dismiss is granted.

## BACKGROUND

Plaintiffs are Illinois residents who are current and former employees of Daimler-Chrysler working at its plant in Belvidere, Illinois, as well as current and former members of UAW and Local 1268. Defendants UAW and Local 1268 are labor unions that represent

Daimler-Chrysler employees at the Belvidere plant. Employees at the Belvidere plant are covered by the collective bargaining agreement between Daimler-Chrysler and UAW dated September 29, 2003 ("CBA"). On May 2, 2006, Daimler-Chrysler, International Union, and UAW entered into a Memorandum of Understanding ("MOU"), amending certain provisions of the CBA to authorize the use of a temporary workforce to staff a new third shift at the Belvidere plant.

Earlier in 2006, Daimler-Chrysler announced publicly that the Belvidere plant would start hiring employees for a new third shift. Plaintiffs claim that Daimler-Chrysler received $30 million in tax credits and grants from the State of Illinois to create hundreds of new third shift positions at the Belvidere plant. Daimler-Chrysler used its website to advertise the new jobs and to accept employment applications, hiring an outside agency, Aon Services, to conduct the screening process. Plaintiffs applied for the third shift positions through the Daimler-Chrysler website and passed the screening process. They were told to report for their first day of orientation. In preparation, they resigned from their former jobs.

On June 18, 2006, plaintiffs arrived for their first day of orientation and were presented with an Enhanced Temporary Employment Agreement ("ETEA") which outlined the terms of their employment, informing them of their wages and benefits and that employment was anticipated to be for a period of up to two years. Additionally, plaintiffs were asked to acknowledge that "this employment opportunity in no way constitutes a permanent full time job offer as outlined in the [CBA]" and that they would not acquire seniority, unemployment security system benefits, supplemental unemployment benefits, retirement entitlements, or recall or transfer rights. The ETEA further stated that the agreement itself, the conditional offer letter, an attached five page exhibit titled "Summary of Total Compensation: UAW - Enhanced

Temporary Employees, Belvidere Assembly Plant," and the CBA constituted the complete understanding between the parties. The parties do not dispute that each of the plaintiffs signed the ETEA.

The Summary of Total Compensation accompanying the ETEA defined an enhanced temporary employee as an employee hired on or after June 12, 2006 in support of the additional shift at the Belvidere Assembly Plant. Employees were informed that they were not eligible for or covered by any other compensation or benefit under any plan or program that was not expressly set forth in the document.

Plaintiffs allege that they were unaware that they were applying for temporary employment. They claim that Daimler-Chrysler's website and media publicity led them to believe they were applying for permanent employment under the same terms and conditions as other Daimler-Chrysler Belvidere employees. They further allege that Daimler-Chrysler represented to the State of Illinois that the new jobs were permanent jobs in order to obtain the Illinois tax credits and grants. Plaintiffs claim that not until they had given up their previous jobs and reported for their first day of work did they learn that their new jobs were temporary.

Plaintiffs filed this four count complaint, seeking compensatory and punitive relief against defendants. Count I alleges a breach of the CBA by Daimler-Chrysler in violation of Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a) ("Section 301"). Count II alleges a violation of the duty of fair representation by the UAW and Local 1268 pursuant to Section 9 of the National Labor Relations Act ("NLRA"), 29 U.S.C. § 159 ("Section 9"). Counts III and IV allege fraud and promissory estoppel.

**DISCUSSION**

In reviewing a motion to dismiss pursuant to FED.R.CIV.P. 12(b)(6), the court does not consider how likely plaintiffs are to succeed, but whether they are entitled to offer evidence to support their claims. *Triad Assocs v. Chicago Hous. Auth.*, 892 F.2d 583, 586 (7th Cir. 1989). It is well established that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Redfield v. Continental Casualty Corp.*, 818 F.2d 596, 605 (7th Cir. 1987). The court must accept all factual allegations made in the complaint as true and construe reasonable inferences in favor of the plaintiff. *Rueth v. United States Environmental Protection Agency*, 13 F.3d 227, 229 (7th Cir. 1993).

The standard for resolving a motion for lack of subject matter jurisdiction under FED.R.CIV.P. 12(b)(1) differs from a motion to dismiss only in that the court is not limited to the jurisdictional contentions asserted in the complaint, but may consider other evidence submitted to determine whether subject matter jurisdiction exists. *Ezekiel v. Michel*, 66 F.3d 894, 897 (7th Cir. 1995).

In this case, plaintiffs essentially have two arguments. Firstly, they claim that Daimler-Chrysler fraudulently tricked them into applying for temporary employment and deprived them of permanent jobs. Secondly, they claim that Daimler-Chrysler, UAW and Local 1268 breached their rights under the CBA by amending it and creating the MOU and the ETEA. We will examine the plaintiffs' claims in the order they are presented in their complaint.

*A. Count I: Breach of the CBA under the Labor Management Relations Act*

In Count I, plaintiffs claim that Daimler-Chrysler breached the CBA in violation of Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a) ("Section 301"). Section 301 provides:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a). Plaintiffs allege that Daimler-Chrysler had no authority to amend the CBA, and unlawfully and willfully breached the CBA in violation of Section 301. Defendants counter that, because plaintiffs' claims actually are validity claims rather than violation claims, this court does not have jurisdiction to hear the case.

Our examination will begin with the Supreme Court's decision in *Textron Lycoming Reciprocating Engine Div., AVCO Corp. v. United Auto., Aerospace, Agr. Implement Workers of America, Inter. Union and Its Local 787,* 523 U.S. 653 (1998), which interpreted whether Section 301 concerned invalidity of contracts as well as violations. The Court found that the phrase "suits for violation of contracts" in Section 301 did not apply to suits which claimed that a contract was invalid, but to suits claiming that a contract had been violated. *Id.* at 657; *Stevens Const. Corp. v. Chicago Reg'l Council of Carpenters*, 464 F.3d 682, 685 (7th Cir. 2006). The court further found that the prohibition against using Section 301 to claim a contract was invalid was only a bar against granting subject matter jurisdiction, the exact issue being examined here; after a party has properly alleged the violation of a contract, it is free to claim invalidity as a later strategy. *Id.* at 657-58. The Court also allowed an exception where Section 301 is used by a

5

defendant to claim that a contract is invalid as an affirmative defense against a plaintiff's claim of violation. *Id.* at 658. That circumstance is not relevant here.

Defendants claim that plaintiffs' lawsuit, while cast as an allegation of violations of the CBA, is an attempt to invalidate the MOU and ETEA. To address their argument, we look directly to the complaint at the plaintiffs' allegations:

> 1. Plaintiffs were "made to sign individual employment agreements that were in violation of their rights under the [CBA]"
> 2. The MOU "does not and cannot give any such authority to [Daimler-Chrysler] and the union defendants to amend the [CBA] . . . [Daimler-Chrysler] and the union defendants did not lawfully amend or otherwise modify the [CBA] to give themselves authority. . ."
> 3. Since "the purported amendment [MOU] was unlawful and never took effect and is invalid for the reasons set forth . . . below and for the fraudulent and deceptive way in which it was negotiated so as to mislead plaintiffs . . . plaintiffs were entitled to all of the rights of employees covered under the [CBA] and defendant [Daimler-Chrysler] is in breach of such [CBA.]
> 4. By "denying plaintiffs the rights to which they are entitled under the [CBA] notwithstanding any spurious or unlawful attempt to 'amend' such [CBA] secretly and deceptively and without notice to plaintiffs, and without prior disclosure to plaintiffs before they quit their existing employment, [Daimler-Chrysler] unlawfully and willfully breached the [CBA] . . . in violation of Section 301 of the LMRA.

Second Amended Complaint ¶¶ 30-39. By examining this specific language from the complaint, we understand that plaintiffs believe that the very existence of the ETEA and the MOU violated their rights under the CBA. We find several problems with this position.

Firstly, before the plaintiffs signed the ETEA, they were not employees of Daimler-Chrysler and therefore had no rights under the CBA. This is a crucial point. If the plaintiffs had been contractual employees of Daimler-Chrysler and members of UAW and Local 1268—covered by the CBA—at the time of the signing of the MOU, perhaps this would be a different case. At the time of the signing of the MOU, however, plaintiffs were non-employee

6

members of the public; at most, they were prospective employees. Plaintiffs' allegations that they were "made to" sign the ETEA is simply not correct. Perhaps they faced a difficult choice for which they felt surprised or unprepared, a situation for which we feel sympathy. But our sympathies cannot change the fact that plaintiffs did not have rights under the CBA <u>at the time of signing the ETEA</u> that could be violated because they were not yet employees of Daimler-Chrysler or parties to the CBA. "A union need not represent non-employees." *Merck v. Jewel Co. and UFCW*, 848 F.2d 761, 766 (7th Cir. 1988), *cert. denied* 488 U.S. 956 (1988).

Secondly, the plaintiffs' claim that the MOU did not give the defendants the right to amend the CBA is rather mystifying. The CBA itself gives the defendants the right to "modify, amend or terminate this Agreement." CBA, §117 at 119. While the plaintiffs did not submit the CBA to the court in their briefs, the defendants did attach relevant sections, and the CBA states that the parties are free to negotiate modifications to the CBA.

Thirdly, the plaintiffs' own words indicate that they want the court to declare the MOU invalid. The Supreme Court in *Textron* held that Section 301 is not a vehicle for granting subject matter jurisdiction to courts hearing an invalidity claim, but only a violation claim. While the plaintiffs' complaint is replete with conclusory allegations of violation, they do not identify a single section of the CBA which defendants allegedly violated. The entirety of their argument is that they feel cheated. "Plaintiffs seek no new bargaining at all, but only to enforce the existing [CBA] in place at the time of their application for employment, prior to the deceptive and unlawful add-on of the MOU rider [sic]." Pl. Resp. at 7. We do not have jurisdiction to hear their claims of invalidity.

Finally, we find it difficult to envision the circumstances in which Daimler-Chrysler violated the rights of prospective employees by failing to disclose the MOU. As noted above,

because the plaintiffs were non-employee members of the public at the time that the MOU was signed between defendants, the defendants had no legal obligation to notify plaintiffs─or any other member of the public─of the changes to the CBA.

At the motion to dismiss stage, we take no position on the validity of the MOU, or the ETEA. We must, however, be cautious when hearing a jurisdictional challenge. While we strive─indeed are obliged to─read the complaint in the light most favorable to the nonmoving party, our interpretative skills are challenged by the plaintiff's argument. Taken at its face value, the complaint alleges that the MOU is "deceptive and unlawful," or invalid. Further, the plaintiffs ask the court to strike the MOU and ETEA, or declare them invalid. Finally, the plaintiffs ask the court to enforce the CBA as it existed prior to the MOU and ETEA. These are arguments for invalidity, not for violation, and therefore fail under Section 301.

Because we find that Section 301 does not grant this court subject matter jurisdiction, we have no need to address the defendants' argument that the plaintiffs have failed to state a claim for breach of the collective bargaining agreement. Count I of the plaintiff's complaint is therefore dismissed.

B. *Count II: Breach of Duty of Fair Representation*

In Count II, plaintiffs allege that the UAW violated Section 9 of the National Labor Relations Act, 29 U.S.C. § 159 ("Section 9"), by (1) refusing to represent plaintiffs "in any way" under the CBA; (2) refusing to "assert their rights" under the CBA; (3) agreeing with defendant Daimler-Chrysler to "keep plaintiffs in a subservient status" as temporary employees for a two-

year period; and (4) denying plaintiffs "even the ordinary right to use the grievance procedure" of the CBA.

Unions have a duty of fair representation due to their status as the exclusive bargaining representative granted by Section 9. *Freeman v. Local Union No. 135, Chauffeurs, Teamsters, Warehousemen and Helpers, 746 F.2d 1316, 1321* (7th Cir. 1984). We respectfully disagree with plaintiffs' contention, however, that Section 9 confers subject matter jurisdiction upon this court. Section 9 grants the National Labor Relations Board the power to hear petitions; Section 9 does not provide a basis for jurisdiction in this court. 29 U.S.C. § 159. In fact, the only basis for federal court jurisdiction in the National Labor Relations Act is in Section 10, which states that "any person aggrieved by a final order of the Board . . . may obtain a review of such order in any United States court of appeals in the circuit wherein the unfair labor practice in question was alleged . . . ." 29 U.S.C. § 160(f). In this case, there has been no final order by the Board; in fact, we are unaware of the plaintiffs filing a complaint with the NLRB at all.

Because we find that Section 9 does not grant jurisdiction to this court, we dismiss Count II of the plaintiff's complaint for lack of subject matter jurisdiction.

C. *Counts III and IV*

Having found no federal subject matter jurisdiction for Counts I and II, the court declines to extend its power of supplemental jurisdiction to hear the remaining state claims of fraud and promissory estoppel. Counts III and IV, therefore, are also dismissed.

## **CONCLUSION**

For the foregoing reasons, the motions of defendants Daimler-Chrysler Corporation [41] and United Auto Workers [43] to dismiss the complaint of plaintiffs Carla Damen, Pilar Fekete, Jason Gustafson, Dakneelya Harty, and Katy Hungness is granted.

It is so ordered.

_____
Wayne R. Andersen
District Judge

Dated: August 31, 2007